IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED TAXICAB WORKERS, an unincorporated association, MARSHALL CHILDS, an individual, DAVID BARLOW, an individual, DAVID SCHNEIDER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO and BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendants.<br>_____/ | No. C 08-05415 WHA<br><br>**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AND ORDER TO SHOW CAUSE RE RULE 19** |

**STATEMENT**

Plaintiffs are San Francisco taxicab drivers and an association of taxicab drivers. In November 2006, plaintiffs filed a state court action against several taxicab companies, alleging the companies charged them excessive "gate fees." The overcharges allegedly occurred from September 1, 2004 through November 1, 2006. The San Francisco Police Code § 1135.1 provided that taxicab companies could charge a gate fee of $91.50 on average per ten-hour shift until September 1, 2004, and on September 1, 2004, the gate fees would revert to $85.00 unless certain conditions occurred. Those conditions never occurred and, so $85.00 should have been the amount of gate fees charged starting on September 1, 2004, or so it was alleged. In August 2007, the City and County of San Francisco intervened in the state court action, purportedly siding with the drivers.

1    In February 2008, however, the San Francisco Board of Supervisors passed an ordinance
2 amending Section 1135.1, which was signed into law in March 2008.  Amended Section 1135.1
3 stated that "the average gate fees actually charged to taxi drivers by taxicab companies from
4 January 1, 2003 through October 27, 2006 and not exceeding an average of $91.50 for a shift
5 of 10 hours or longer are hereby declared to be fair, reasonable, and in compliance with any
6 applicable provision of this Section 1135.1 during that period" (Compl. ¶ 3).  At least on its
7 face, the amendment retroactively declared that the taxicab companies were in compliance with
8 the law when they charged gate fees higher than those allowed by law at the time.
9    In December 2008, plaintiffs and the City dismissed their state court actions without
10 prejudice.  In December 2008, plaintiffs then brought this action in federal court against the
11 City and County of San Francisco and the Board of Supervisors of the City and County of
12 San Francisco, alleging that the amended version of Section 1135.1 is unconstitutional.

**ANALYSIS**

14   In San Francisco, taxi drivers are charged a "gate fee" by taxicab companies for the
15 privilege of operating their vehicles.  Absent some exceptional circumstance, the law allows
16 the amount of any such fee to be a matter of negotiation and contract between the driver and
17 the taxicab company.  One such exceptional circumstance would be a government regulation.
18 In this regard, the City and County of San Francisco has traditionally placed a cap on the
19 amount that can be charged.  That certainly is within its constitutional police powers.  Subject to
20 the cap, however, it remains a matter of negotiation and private contract as to the amount of any
21 fee. For example, the parties could certainly agree to a fee *less* than the cap.  If a contract is at
22 will and/or terminable by either side on short notice, either side could walk away from the
23 relationship until the fee was altered to its liking, subject as always to the cap.  That is, a
24 company could fire an at-will driver unless he agreed, going forward, to pay the maximum
25 allowed by law.  On the other hand, if the contract was for a term (of months or years) and
26 specified a dollar amount as the rate, any overcharge during the term of the contract would
27 be a breach.  No amount of legislation could *retroactively* exonerate such a breach.

2

But what if the contracts were not so explicit? What if the contracts called for payment of fees at the maximum published rate allowed by the City? The published amounts would then be read into the contracts and the caps would rise and fall with the maximum allowed by the City.

To take one last example, what if the contract provided that the fee would float with the ordinance rate *even those approved retroactively*? Parties could so agree. Contracts can have a payment term that is based on contingent future events. Interest rates and price adjustments are often so dependent. In that event, if the cap were increased, even retroactively, then both sides would have bound themselves by contract to live with it. As for drivers who left or were terminated, of course, it would be problematic to try to recover a retroactive increase but for ongoing drivers it might simply be regarded as a cost of doing business. This scenario may be a bit farfetched but it is within the realm of the plausible.

Here, the ordinance *retroactively* declared gate fees up to $91.50 per shift to be "fair and reasonable" for the period in question. During that period, however, the ordinance had capped them at $85.00 per shift. As discussed, some contract scenarios would hold the ordinance effective to change the rate. For other scenarios, it would be ineffective. What is our contract scenario? The motion record shows nothing. The complaint describes the contract at issue as follows (¶ 27):

> Plaintiffs Childs, Barlow, and Schneider and the class of drivers they sought to represent in *UTW, et al. v. Yellow Cab Cooperative, Inc.*, *et al.* formed binding executory contractual agreements with the taxicab companies doing business in San Francisco named as defendants in that matter, each shift they worked. In those contracts, plaintiffs agreed to pay all gate fees in exchange for use during a specified period of the San Francisco taxicab companies' properly licensed and maintained taxicabs. Said series of daily agreements had implied by law a provision that each party to the agreement would comply with the law including, inter alia, charging only those gate fees which were lawfully allowed under the San Francisco Police Code.

This is mere allegation and is hard to comprehend anyway. It would be better if the real-world contracts were supplied (if any exist). None were. So there is a big evidentiary gap. It is, therefore, impossible to grant or deny these motions. A trial may be necessary to sort out the contracts so that we can tell the *actual* impact on the *actual* contracts at issue.

3

The City and County of San Francisco is correct that it was within its constitutional police power to declare that it would not revoke a license merely because the company had, in the past, overcharged drivers. There would have been rational legislative considerations for deciding to stay its hand in such circumstances. Such a prosecutorial declination, however, would not change the fact that there had been overcharges (assuming there had been overcharges) and that the drivers could sue the companies for a refund. It would be like a prosecutor announcing that it would not, in the exercise of prosecutorial discretion, indict a company for criminal overcharging. But such an announcement would not prevent victims of the overcharging from suing the wrongdoer to recover the overcharges. If, before the amendment, plaintiffs were entitled to recover monies from the companies, then they were still entitled to recover the same amounts after the amendment — unless somehow the contracts in question incorporated a floating formula that allowed for retroactive adjustment. Again, the record is inconclusive on the wording and effect of the contracts, so judgment on the pleadings must be **DENIED**.

This leads to a further question — are the taxicab companies necessary parties under Rule 19, given that resolution of this dispute turns on the meaning of their contracts and given that those companies have a monetary stake in the outcome of this litigation? Within **TEN CALENDAR DAYS**, all parties hereto are **ORDERED TO SHOW CAUSE** why this case should not be dismissed for failure to join a necessary party under Rule 19.

On a different point and subject to the case even remaining in court, the City and County of San Francisco relies on supposed "legislative history" of proposals that were *not* adopted. This order agrees with plaintiffs that this roundabout argument entitles the plaintiffs to discovery on the true legislative history. This order will allow two depositions, each up to one day, on this subject, as well as reasonable document discovery on this subject. Please do

4

not try to take an elected official's deposition without a compelling reason.  And please take no discovery until the Rule 19 issue is resolved.

**IT IS SO ORDERED.**

Dated:  May 22, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE